EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS MARCHAND PAZ, acusado y apelante.

Núm. 7211.—*Resuelto:* Noviembre 30, 1938.

*Angel D. Marchand Paz,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

### EN MOCION DE RECONSIDERACION

En 26 de julio de 1938 las partes en este recurso convinieron en someterlo en sus méritos y por los argumentos y la prueba elevada ante este tribunal en el caso núm. 6639, *El Pueblo de Puerto Rico* v. *Carlos Marchand Paz,* por el delito de asesinato en segundo grado. La sentencia en este último caso fué revocada y devuelto el mismo para ulteriores procedimientos no inconsistentes con la opinión de este tribunal (ante, pág. 671). En el presente recurso, número 7211, la sentencia de la corte inferior fué confirmada más o menos por la autoridad del caso de *El Pueblo* v. *Peña,* 50 D.P.R. 862, 865, al efecto de que el delito de portar armas era distinto al de asesinato en segundo grado.

En el caso de asesinato la sentencia fué revocada debido a ciertas manifestaciones impropias hechas por el fiscal al jurado.

.Sucedió que el Juez De Jesús, quien presidió el caso, preparaba sus instrucciones cuando las manifestaciones impropias fueron hechas y no oyó los comentarios del fiscal. Por tanto, lo que el juez de distrito hizo fué considerar la prueba que desfiló ante él, sin referirse a las observaciones del fiscal.

El argumento del apelante es que. si este tribunal permite que la sentencia confirmatoria subsista, cuando el caso vaya a la corte de distrito el jurado tendrá conocimiento o noticias de que Carlos Marchand Paz fué convicto de portar un arma prohibida y que tal conocimiento afectaría el veredicto del jurado. La defensa de Carlos Marchand Paz fué en efecto que no se hallaba presente al cometerse el asesinato y que el verdadero culpable fué otra persona. El apelante admite que en el caso corriente en que se hace la alegación de defensa propia no puede haber por lo general duda alguna de la portación del arma prohibida, si es que tal arma realmente se usó, mas los hechos del caso de autos, según hemos indicado, difieren por completo.

El apelante en este caso no ha radicado alegato ni señalamiento de errores, sino que sometió el recurso por la prueba y los argumentos del caso de asesinato. Este último fué revocado en efecto a base de declaraciones juradas que no estuvieron ante el juez de distrito al dictar su sentencia. No se nos presentaron argumentos especiales durante la vista similares a los que ahora se sugieren. El dejar de colocar a esta corte en posición para juzgar los méritos de la presente solicitud sería suficiente para que se declarara sin lugar la moción de reconsideración.

Con frecuencia sucede que el juez o jurado ante quien se ve el caso condenará al acusado a base de cierta prueba y que otro no lo hará así. El Juez De Jesús, que oyó la prueba, resolvió en definitiva que Carlos Marchand Paz portaba un arma prohibida. La cuestión de culpabilidad en el caso de

asesinato fué dejada al jurado que condenó a Carlos Marchand Paz. Otro jurado tal vez podría resolver lo contrario al juzgar la misma prueba que convenció al Juez De Jesús de que el acusado era culpable de portar un arma prohibida.

No podemos asumir con el apelante que en un segundo juicio por asesinato el jurado será informado del resultado de la apelación interpuesta en el presente recurso. Mucho menos podemos asumir que el jurado será indebidamente influído por cualesquiera rumores o por alguna otra información extraña a la prueba que pueda aducirse durante el juicio y que como resultado de tal influencia impropia violará su deber solemne y la seguridad de ordinario dada por éste al efecto de que juzgará el caso de conformidad con la prueba que se le someta y con la ley, tal cual ésta le es explicada en las instrucciones dádasle por el juez sentenciador. De todos modos, el temor del letrado del apelante de que algo similar pueda ocurrir en un segundo juicio por asesinato, no ofrece razón satisfactoria alguna para que se deje sin efecto la sentencia de este tribunal en el presente caso.

*Debe declararse sin lugar la moción de reconsideración.*

Los Jueces Sres. Presidente Del Toro y Asociado De Jesús no intervinieron.

### OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR TRAVIESO

Antes de exponer las razones que me obligan a disentir de la resolución dictada en 30 de noviembre de 1938, por la cual se declaró sin lugar la moción del acusado apelante para la reconsideración de la sentencia dictada por esta Corte Suprema en 30 de julio de 1938, confirmando la dictada por la Corte de Distrito de San Juan en el caso de epígrafe, paréceme conveniente hacer una relación de los hechos esenciales de este caso.

En 13 de junio de 1936 el Fiscal del Distrito de San Juan radicó dos acusaciones contra Carlos Marchand Paz. En la primera (Causa núm. 2870) se le acusaba de un delito de

asesinato, consistente en haber dado muerte ilegal al policía insular Orlando Colón, con una pistola, "allá el día 5 de junio de 1936 y en Río Piedras, Puerto Rico." En la segunda (Causa núm. 10,930) se le imputaba que "Allá por el día 5 de junio de 1936, y en Río Piedras, Puerto Rico, . . . ilegal, voluntaria y maliciosamente portaba sobre su persona, con fines de ofensa y defensa, una pistola, que es un arma de fuego, etc."

En 10 de agosto de 1936, al serle leídas dichas acusaciones, el acusado solicitó que se vieran conjuntamente. En el acto de la vista de las dos causas, el acusado interpuso en contra de ambas acusaciones la defensa de coartada, o sea la de que en la noche del 5 de junio de 1936, entre 8:30 y 9:00 p. m., hora en que según la prueba del fiscal fué muerto el policía Colón, el acusado se encontraba fuera del pueblo de Río Piedras, en una finca en el campo, y que por lo tanto no pudo ser él quien diera muerte a Colón, ni tampoco el que portara el arma prohibida en el sitio y en el momento señalados por la prueba de la acusación.

El 18 de diciembre de 1936 el jurado que conoció de la causa por asesinato rindió su veredicto, declarando a Marchand culpable del delito de Asesinato en Segundo Grado. En la misma fecha, el juez de distrito declaró al acusado culpable del delito de portar armas y le condenó a tres meses de cárcel. En 19 de febrero de 1937, el acusado radicó una moción de nuevo juicio basada, entre otros, en el fundamento de que el jurado había sido indebidamente influído por las manifestaciones hechas por el fiscal en su informe de rectificación, al efecto de que cierto testigo de la defensa, después de declarar ante el jurado, había ido a la oficina del fiscal e informado a éste que le habían ofrecido $30 para que se embarcara después de haber confesado que él era el autor de la muerte del policía Colón. El 13 de abril de 1937, la corte de distrito desestimó la moción de nuevo juicio y el 19 del mismo mes condenó al acusado a sufrir la pena de veinte años de presidio, con trabajos forzados.

Apeladas ambas sentencias para ante esta Corte Suprema, celebróse la vista del caso por asesinato (núm. 6639) en 18 de abril de 1938; y en 28 de julio de 1938, esta corte, considerando que la alegada conducta del fiscal era digna de censura y que no podía ser tolerada, dictó sentencia revocando la dictada por la corte inferior y ordenó la celebración de un nuevo juicio.   En la opinión que sirvió de base a dicha sentencia, dijimos:

''La conducta del fiscal con toda probabilidad ya había dejado una marca indeleble en el ánimo de los jueces de hecho.   La manifestación del fiscal, de ser creída por el jurado, tendió a demostrar una admisión de culpabilidad por el acusado e indirectamente acusó a la defensa del serio crimen de tratar de sobornar a un testigo. No podemos determinar todo el efecto de semejante manifestación, pero a nuestro juicio, resultó inevitablemente perjudicial.

''. . . No hay duda alguna de que el jurado recibió de labios del fiscal algo que equivalía a evidencia inadmisible y estamos convencidos de que la naturaleza perjudicial de esa prueba no pudo ser subsanada por nada que el juez pudiera haber dicho.   El daño fué irreparable.''

El día 27 de julio de 1938 el presente caso, núm. 7211, por el delito de portar armas, fué sometido a nuestra consideración por la misma prueba y alegatos presentados en el caso núm. 6639, por asesinato.   El día 30 de julio de 1938, este tribunal dictó sentencia confirmando la dictada por la corte de distrito, por la que se declaró a Carlos Marchand Paz culpable del delito de portar ilegalmente una pistola, en el pueblo de Río Piedras, entre las 8:30 y 9:00 de la noche de dicho día.

El acusado apelante ha solicitado que reconsideremos la sentencia confirmatoria de la dictada por la corte de distrito y que resolvamos, en la alternativa: (a) revocar la sentencia de la corte inferior y ordenar un nuevo juicio, o (b) dar por no pronunciada nuestra sentencia de julio 30, 1938, y dejar el caso pendiente de resolución hasta que se haya celebrado en la corte inferior el nuevo juicio ordenado por esta

Corte Suprema en el caso de asesinato. Mis distinguidos colegas han propuesto y acordado que se deniegue la moción de reconsideración. Difiero fundamentalmente de ese criterio y paso a exponer brevemente las razones en que baso mi disentimiento.

Los dos delitos imputados al acusado, aún cuando técnicamente son distintos y separados, están tan íntimamente relacionados entre sí, que la convicción del acusado en cuanto a uno de ellos debe traer como consecuencia inevitable su convicción por el otro. La situación del acusado en este caso específico es más difícil aun dada la naturaleza de su defensa —la coartada. Su situación sería distinta si se tratase de un caso de defensa propia, pues en esos casos el acusado admite la comisión del homicidio y solamente trata de justificarlo. Y en esos casos, la condena previa por portación ilegal del arma no perjudica en manera alguna al acusado en el caso por homicidio. La defensa propia puede prevalecer aun cuando el arma con que se ejercitó ese derecho fuese portada ilegalmente.

Del récord del caso no aparece que la pistola con que se dió muerte a Colón fuera ocupada, ni se presentó prueba alguna demostrativa de que el acusado fuese dueño o poseedor de una pistola. La convicción del acusado en uno y en otro caso se basó en las inferencias derivadas de la prueba aducida por el ministerio público para sostener el cargo de asesinato.

Soy de opinión que el efecto legal de una sentencia ordenando la celebración de un nuevo juicio debe ser el de colocar al acusado en la misma situación legal y constitucional en que se encontraba al comenzar el primer juicio, anulado por la sentencia revocatoria. La revocación de la sentencia trae como consecuencia la anulación del veredicto y también la del récord en que éste se basara, dejando al acusado en condiciones de poder comparecer ante el nuevo jurado que ha de juzgarle, escudado por la presunción de inocencia que la ley establece a su favor.

¿Podrá Carlos Marchand Paz comparecer ante un jurado que le presuma inocente y que esté en condiciones de darle el beneficio de cualesquiera dudas que puedan surgir en su mente en cuanto a su culpabilidad, después que la prensa y el radio hayan difundido por todos los ámbitos de esta pequeña y superpoblada Isla, que este Tribunal Supremo, al confirmar la sentencia de la corte de distrito, resolvió de una manera definitiva que Carlos Marchand Paz estaba en el pueblo de Río Piedras entre las 8:30 y 9:30 de la noche del día 5 de junio de 1936, y que allí y entonces portaba ilegalmente una pistola? ¿Qué valor podrá tener para el nuevo jurado la defensa de coartada, ante una sentencia de esta Corte Suprema que declara como un hecho probado que el acusado se encontraba en el sitio y a la hora en que Colón fué asesinado portando una pistola, o sea que no es cierto que el acusado estuviese en otro sitio distinto a la hora en que se cometió el crimen que se le imputa?

Mis estimados colegas tratan de contestar las preguntas que acabo de formular, diciendo en la opinión prevaleciente:

"No podemos asumir con el apelante que en un segundo juicio por asesinato el jurado será informado del resultado de la apelación interpuesta en el presente recurso. Mucho menos podemos asumir que el jurado será indebidamente influído por cualesquiera rumores o por alguna otra información extraña a la prueba que pueda aducirse durante el juicio y que como resultado de tal influencia impropia violará su deber solemne y la seguridad de ordinario dada por éste al efecto de que juzgará el caso de conformidad con la prueba que se le someta y con la ley, tal cual ésta le es explicada en las instrucciones dádasle por el juez sentenciador. De todos modos, el temor del letrado del apelante de que algo similar pueda ocurrir en un segundo juicio por asesinato, no ofrece razón satisfactoria alguna para que se deje sin efecto la sentencia de este Tribunal en el presente caso."

Mi réplica al párrafo transcrito es que, por el contrario, lo que debemos asumir es que en esta era de intensa publicidad en que vivimos, en que la prensa y el radio nos

informan diariamente sobre los sucesos del día y nos trasmiten el texto íntegro de las sentencias de los tribunales, un buen número por lo menos de los ciudadanos que han de formar el panel de jurados que han de juzgar al acusado de haber dado muerte al policía Colón, estarán enterados de la decisión de esta corte en el caso de autos. Y siendo eso así, el acusado estará expuesto a no tener el juicio justo e imparcial a que la ley le da derecho.

Por las mismas razones que invocamos para revocar la sentencia en el caso de asesinato, expresadas en los párrafos arriba transcritos, opino que la sentencia en el caso de autos puede dejar "una marca indeleble en el ánimo de los jueces de hecho"; que si las manifestaciones del fiscal en la causa por asesinato fueron suficientes para viciar el veredicto y justificar su anulación, la sentencia cuya reconsideración se pide puede causar un perjuicio mayor al acusado en el nuevo juicio, pues no solamente envuelve una declaración de culpabilidad sino que destruye por completo la teoría de la defensa, colocando al acusado en el sitio y en el momento del crimen, armado de una pistola. Es indudable que el conocimiento que pueda tener el jurado, o alguno de sus miembros, resultará "inevitablemente perjudicial" para el acusado.

¿Cómo podría el acusado protegerse contra ese perjuicio que hemos calificado de inevitable? ¿Sería aconsejable o prudente examinar a los jurados en cuanto al conocimiento que cada uno de ellos pudiera tener de la sentencia en el caso de autos, corriendo así el riesgo de tener que informar a los que nada sabían y el de dejar una marca indeleble en el ánimo de todos? ¿Cumplirá el abogado defensor su deber si, consciente del probable prejuicio existente en la mente de los jurados, se abstiene de examinarlos en cuanto a ese prejuicio, exponiendo así a su cliente a ser juzgado por un jurado prejuiciado en contra de su defensa?

Podrá argüirse que la corte protegerá al acusado, instruyendo al jurado en cuanto a la ley aplicable al caso. A

eso podemos replicar: ¿Si revocamos la sentencia en el caso de asesinato, porque estuvimos "convencidos de que la naturaleza perjudicial de esa prueba no pudo ser subsanada por nada que el juez pudiera haber dicho," y opinamos que el daño causado al acusado fué "irreparable," qué razón o fundamento podemos tener para creer que un jurado que no puede borrar de su mente unas pocas palabras pronunciadas por un fiscal en el calor de la improvisación, será capaz de borrar de ella la impresión que indudablemente ha de causarle la opinión de esta corte, dictada con toda la ecuanimidad y ponderación de un tribunal de apelaciones?

Porque creo que la reconsideración de nuestra sentencia no ha de afectar en lo más mínimo los intereses de la justicia pública y que, por el contrario, la denegación de la moción puede y seguramente ha de perjudicar al acusado apelante en sus derechos substanciales, opino que debimos reconsiderar nuestra sentencia y dejar el caso pendiente de resolución hasta que la causa por asesinato sea resuelta definitivamente.